MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
E. CLAY MARQUEZ (S.B. #268424)
cmarquez@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 984-8700

*Attorneys for Defendant*
JOHNSON & JOHNSON CONSUMER INC.

TODD M. FRIEDMAN (S.B. #216752)
tfriedman@toddflaw.com
MEGHAN GEORGE (S.B. #274525)
mgeorge@toddflaw.com
LAW OFFICES OF TODD M. FRIEDMAN,
P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Tel: 877-619-8966

*Attorneys for Plaintiff*
NARGUESS NOOHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NARGUESS NOOHI, individually and on behalf of other members of the general public similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON & JOHNSON CONSUMER, INC., DOES 1-100, INCLUSIVE. <br><br> Defendant. | Case No. 2:20-cv-03575-TJH-JEM <br><br> **STIPULATED ESI PROTOCOL** <br><br> Judge: Hon. Terry J. Hatter Jr. <br> Mag. Judge: Hon. John E. McDermott |

The Parties hereby agree to the following protocol for the production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to the Protective Order entered in this action, this protocol governs all production in the matter.  This protocol has the objective to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes regarding discovery without Court intervention, including disputes pertaining to scope or costs.  Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules, to rely on any protective order entered in this action concerning protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol.  The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose.

A.   **GENERAL AGREEMENTS**

1.   Ongoing Cooperation Among the Parties. The parties are aware of the importance the Court places on cooperation and commit to continue to consult and cooperate reasonably as discovery proceeds.  The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.  An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner.

2.   Proportionality.

a.   Reasonable Discovery Limits. The proportionality standard set forth in Rule 26(b)(1) shall apply to discovery in this action. Consistent with that proportionality standard, the Parties agree to cooperate in identifying appropriate limits on discovery, including phased discovery and limits on the number of custodians, on discoverable data sources, on the relevant period, and on the

permissible scope of requests for production, specifically including the permissible scope of requests for emails.  Requests for production of ESI, including requests for emails, shall be reasonably targeted, clear, and as specific as possible, rather than general discovery of a product or business.  The parties shall not be obligated to collect or produce ESI created after the date of the filing of the complaint in this Action.

b.      Discoverable Custodians and Non-Custodial Data Sources. Consistent with the proportionality standard, within forty-five (45) days after entry of this Protocol, each Party shall provide to other Parties a list of the Party's ten most likely custodians, as well as a list of non-custodial data repositories, whose reasonably accessible emails and other ESI will be searched for relevant and proportional information.  Custodians shall be identified by name, current or last-known title, dates of employment by the Party, and a brief description of current or last-known employment duties.  Absent a showing of good cause, and subject to any further agreement among the Parties, the list(s) provided pursuant to this paragraph shall be the presumptive limit on ESI discovery.  If any identified custodian or data source is located outside the United States, the Parties shall meet and confer regarding such matters as relevancy and privacy of the data at issue and, as applicable, the timing of production of any such data.

c.      Discovery Concerning Preservation and Collection Efforts. Discovery concerning the preservation and collection efforts of another party can contribute to unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  If there is a reasonable dispute concerning the scope of a party's preservation or collection efforts, before discovery about such efforts is initiated, the parties or their counsel shall meet and

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

confer to address the specific stated need for such discovery, its relevance to claims and defenses, its proportionality to the needs of the case, and the availability and suitability of alternative, less burdensome means to obtain the information.

d.     <u>On-Site Inspections of ESI</u>. On-site inspections of ESI under Rule 34(b) shall be permitted, if at all, only upon a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the parties.  As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate.

e.     <u>Non-Discoverable ESI</u>. Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

     i.     ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

     ii.     Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

     iii.     Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

     iv.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

     v.     On-line access data such as (without limitation)

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

temporary internet files, history files, cache files, and cookies;

vi.     Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

vii.    Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

viii.   Voicemail, including Telephone or VOIP voice messages;

ix.     Text messages and instant messages not retained in the ordinary course of business;

x.      Server, system, network, or software application logs;

xi.     Data remaining from systems no longer in use that is unintelligible on the systems in use;

xii.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

xiii.   Software files included on the National Institute of Standards and Technology (NIST) Modern RDS  (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download/current-rds;

xiv.    Structural files not material to individual file contents (*e.g.*, .CSS, .XSL, .XML, .DTD, *etc.*);

xv.     Operating System files that do not store user-created content (*e.g.*, CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, *etc.*);

xvi.    Application source code, configuration, and other similar

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

1  files necessary for the function of an application that do not

2  store user-created content during ordinary use (*e.g.*, BAK, BIN,

3  CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT,

4  YTR, *etc.*).

5  f.  Disaster-Recovery Backup Data. Consistent with the

6  proportionality standard, and absent a Party's specific written notice

7  for good cause, no Party shall be required to modify or suspend

8  procedures, including rotation of backup media, used in the normal

9  course of business to back up data and systems for disaster recovery

10  purposes.  Absent a showing of good cause, such backup media shall

11  be considered to be not reasonably accessible.

12  3.  No Designation of Discovery Requests. Productions of hardcopy

13  documents and ESI in the reasonably usable form set out in this protocol,

14  including Attachment A, need not be organized and labeled to correspond to

15  the categories in the requests.

16  4.  Protective Order. Procedures for redactions and for the handling of

17  materials subject to claims of attorney-client privilege, work-product

18  immunity, and privacy are set out in the Protective Order entered in this

19  action.

20  B.  **ELECTRONICALLY STORED INFORMATION.**

21  1.  Production in Reasonably Usable Form.

22  a.  The parties shall produce electronically stored information in

23  reasonably usable form. Except as stated in paragraphs B.2 and B.3

24  below or as agreed hereafter by the Parties, such reasonably usable

25  form shall be the single-page TIFF-image format with extracted or

26  OCR text and associated metadata set out in Attachment A, which is

27  incorporated in full in this protocol ("TIFF-*Plus* format").  If the

28  Receiving Party, for good cause explained in the request and subject to

the proportionality standard, seeks production in native format of specifically identified ESI produced originally in TIFF-*Plus* format, the Producing Party shall respond reasonably and in good faith to any such request.  Procedures for production of a native file in response to any such request are set out in Attachment A, Paragraph A.14.b.

b.      Each Party may make requests, for good cause and subject to the proportionality standard, for production of specifically identified documents in color.

c.      If electronically stored information discoverable in this proceeding was previously produced in another legal proceeding, the Producing Party may elect to produce that information in the form in which it was previously produced and shall be under no obligation to conform that prior production to the specifications contained in this Protocol.

2.      <u>Native Files</u>. Discoverable portions of electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), word processing files with tracked changes, comments, or hidden text (*e.g.*, Word), desktop databases (*e.g.*, Access), and audio/video multimedia files shall be produced in native format as described in Paragraph A.14.a of Attachment A.

3.      <u>Enterprise Databases, Database Management Systems, and Other Structured Data ("Structured Data Systems")</u>.

a.      If discoverable data from any Structured Data System can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format in accordance with Paragraph B.1 above;

b.      If an existing report form is not reasonably available, the Producing Party may make reasonable efforts to export from the Structured Data System discoverable information in a format

1    compatible with Microsoft Excel or Microsoft Access and may

2    produce such information in that native format.

3    4.    <u>Use of Native Files in Proceedings in the Case</u>.

4         a.    Unless the Parties agree otherwise in writing, a Party seeking to

5    use a native file in any proceeding in this Action shall print a hardcopy

6    (*i.e.*, paper copy) and shall mark that hardcopy as an exhibit. If

7    printing a hardcopy is impracticable (*e.g.*, because of the excessive

8    number of pages that would be required to be imaged or copied), the

9    Party shall generate a hardcopy of at least five pages that are

10   representative of the entire native file.

11        i.    When a TIFF image of the native file also was produced

12            (*see* Paragraph B.1.a above), the Party shall print the required

13            hardcopy from that TIFF image.

14        ii.    When the native file was initially produced in native

15            format (*see* Paragraphs B.2 and B.3.b above), the Party seeking

16            to use the native file shall:

17                (1)    image the native file to TIFF image or PDF file in

18                    accordance with the specifications in Attachment A,

19                    Paragraphs A.3, A.4, and A.5;

20                (2)    include in the margin of each page of the TIFF

21                    image or PDF file (a) the original production number of

22                    the native file, (b) the full confidentiality designation

23                    required by the Protective Order, and (c) the text, "file

24                    produced natively;"

25                (3)    prepend to the TIFF image or PDF file the

26                    associated slipsheet included with the initial production of

27                    the native file; and

28                (4)    print the required hardcopy from the resulting TIFF

image or PDF file.

b.    Prior to printing a hardcopy as set out in subparagraph 4.a immediately above, a Party may make alterations to a native file to facilitate its use with a witness or to use as an exhibit only on the following conditions:

    i.    Such alterations shall not create a potential for confusion or prejudice.

        (1)    On the condition that there be no confusion or prejudice, examples of permitted alterations include (a) hiding columns or rows that contain no information, and (b) hiding columns containing information not relevant to the columns presented and not otherwise reasonably relevant for context.

    ii.    The Party must make explicit and specific disclosure of each such alteration at a time consistent with local rules and the Judge's standing orders or at least forty-eight (48) hours prior to use of the file in the proceeding.

    iii.    The Party seeking to use a hardcopy of an altered native file shall mark as exhibits both the hardcopy and a hardcopy of a slipsheet setting out (a) the information regarding the unaltered native file required by Attachment A, Paragraph 14.a, and (b) the MD5 or SHA-1 hash value of the originally produced unaltered native file.

    iv.    If a hardcopy prepared in accordance with these provisions is used at deposition, objections to its admissibility may be made within sixty (60) days of its first use.

c.    <u>Reports Created from Native File Data</u>.

    i.    Subject to the limitations set out below, the parties are

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

permitted to create from produced native files summaries, extracts, or reports to use as deposition exhibits.  For example, a party may run a query over a large database extract to isolate data believed to be relevant and may create a report from the same.  Also by way of example, a party may extract information from native spreadsheets and create printouts of the same. Summaries, extracts, or reports must be accurate representations of the original data and are not authorized if they create a potential for confusion or prejudice.

(1)     The party proposing to use a summary, extract, or report of a native file shall disclose in writing, at least forty-eight (48) hours prior to use of any such summary, extract, or report, a description of how it was created.  As applicable, the description must identify the query run and the source data-set or must identify by Bates number the spreadsheet and the columns and rows extracted from it. The writing describing the methodology shall be marked as an exhibit.

(2)     If a summary, extract, or report prepared in accordance with these provisions is used at deposition, objections to its admissibility may be made within sixty (60) days of its first use.

d.     Nothing in this protocol waives the right of any Party to object on any grounds to use in any proceeding in this Action of a native file, of any altered native file, of any slipsheet or TIFF-image associated with the native file, or of any summary, extract, or report of a native file.

5.   Use of Search Filters.

    a.   To contain costs in the identification of relevant ESI for review and production, the Parties may meet and confer to discuss the use of reasonable search filters such as word/phrase filters, proximity filters, or date filters, among other possible filters.  In any such discussion,

        i.   After the Producing Party has first disclosed its search filters, and only if any other party believes in good faith that use of the disclosed search filters would result in deficiencies in production, the Parties will work collaboratively on any revisions to such filters, on the understanding that this may be an iterative process.  Any proposed search filters shall be narrowly tailored to particular claims and defenses.

        ii.   Nothing in this order shall be deemed to be a waiver of any right or responsibility of the Producing Party to manage and control searches of its data files, including the right, upon notice to the Receiving Party, to make good-faith revisions to search filters.

    b.   The fact that any electronic file has been identified in agreed-upon searches shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege or immunity, that it is governed by any applicable privacy law or regulation, that it contains commercially sensitive or proprietary non-responsive information, or that the Protective Order entered in this Action allows the file to be withheld.

    c.   Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a court ruling to modify previously agreed-upon search filters.

6.   Email Threading.

    a.    Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection.  A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread.  The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the Parties need not also produce lesser-included emails in the thread.

    b.    Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "ALL_PARTICIPANTS" field included in the data load file (*see* Attachment A, Paragraph 13.c).  Following production of most inclusive email threads, for good cause and subject to the proportionality standard, a Receiving Party may make reasonable requests for individual lesser-included emails.  The Producing Party shall cooperate reasonably in responding to any such requests if the requested lesser-included emails otherwise would have been subject to production.

7.   Avoidance of Duplicate Production.

    a.    "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values.  The Producing Party need produce only a single copy of responsive Duplicate ESI.  A Producing Party shall take reasonable steps to de-duplicate ESI globally (*i.e.*, both within a particular custodian's files and across all custodians).  Entire document families may constitute Duplicate ESI.  De-duplication shall

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

not break apart families.  When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the OTHER_CUSTODIANS field identified in Paragraph A.13(c) of Attachment A.

b.      If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the OTHER_CUSTODIANS field.  The overlay file shall include both all custodians listed in the OTHER_CUSTODIANS field in prior productions and any custodians newly identified in the current supplemental production.

## C.      DOCUMENTS THAT EXIST ONLY IN HARDCOPY (PAPER) FORM

A Party may produce documents that exist in the normal course of business only in hardcopy form either (a) in their original hardcopy form or (b) scanned and produced, redacted as necessary, in accordance with the procedures set out in Attachment A.  The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

STIPULATED ESI PROTOCOL
2:20-cv-03575-TJH-JEM

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated:  June 11, 2021

MATTHEW D. POWERS
HANNAH CHANOINE
E. CLAY MARQUEZ
O'MELVENY & MYERS LLP

By: /s/          *E. Clay Marquez*
          E. Clay Marquez

*Attorneys for Defendant*
JOHNSON AND JOHNSON
CONSUMER INC.

Dated:  June 11, 2021

TODD M. FRIEDMAN
ADRIAN BACON
MEGHAN GEORGE
LAW OFFICES OF TODD M.
FRIEDMAN, P.C.

By: /s/          *Meghan George*
          Meghan George

*Attorneys for Plaintiff*
NARGUESS NOOHI

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated:  June 14, 2021

HONORABLE JOHN E. McDERMOTT
United States Magistrate Judge

## SIGNATURE ATTESTATION

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  June 11, 2021

O'MELVENY & MYERS LLP

By: /s/          *E. Clay Marquez*
          E. Clay Marquez

*Attorneys for Defendant*
JOHNSON AND JOHNSON
CONSUMER INC.

## **ATTACHMENT A—PRODUCTION SPECIFICATIONS**

A.1.   <u>Image Files.</u> Files produced in \*.tif format will be single page black and white \*.tif images at 300 DPI, Group IV compression.  To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape).  Each \*.tif image will be assigned a unique name matching the production number of the corresponding page.  Such files will be grouped in folders of no more than 1,000 \*.tif files each unless necessary to prevent a file from splitting across folders.  If a file, *e.g.*, a PDF file, exceeds 500 \*.tif images, the producing party may produce the file natively rather than in \*.tif format.  Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

   i.     be consistent across the production;

   ii.    contain no special characters; and

   iii.   be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (*e.g.*, ABC00000001).  The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.  Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.   <u>File Text</u>. Except where a file's full text cannot be extracted (*e.g.*, when a file has been redacted under assertion of privilege or other protection from disclosure), full text will be provided in the format of a single \*.txt file for each file (*i.e.*, not one \*.txt file per \*.tif image).  Where ESI contains text that cannot be extracted, the available \*.tif image will be OCR'd or, as applicable, the redacted native file will have its text re-extracted, and file-level text will

be provided.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file.  The full path of the text file must be provided in the *.dat data load file.

A.3.   <u>Word Processing Files</u>. If word processing files, including without limitation Microsoft Word files (*.doc and *.docx), are produced in *.tif image format, such *.tif images will display tracked changes, comments, and hidden text.

A.4.   <u>Presentation Files</u>. If presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.   <u>Spreadsheet or Worksheet Files</u>. If spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.   <u>Parent-Child Relationships</u>. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved.  Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record.  Parent-child relationships will be identified in the data load file pursuant to paragraph A.13 below.

A.7.   <u>Dynamic Fields</u>. Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8.   <u>English Language</u>. To the extent any data exists in more than one language, the data will be produced in English, if available.  If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9.   <u>Embedded Objects</u>. Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.  If the file with the embedded object is produced in native format, the embedded object need not be extracted.

A.10.   <u>Compressed Files</u>. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.   <u>Scanned Hardcopy Documents.</u>

      a.   In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically or physically unitized).

      b.   For scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds.  OCR text should not be delivered in the data load file or any other delimited text file.

      c.   In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of

1                       the family fields set out below.

2   A.12. <u>Production Numbering</u>.

3         In following the requirements of Paragraph A.1 above, the Producing Party

4   shall take reasonable steps to ensure that attachments to documents or electronic

5   files are assigned production numbers that directly follow the production numbers

6   on the documents or files to which they were attached.  If a production number or

7   set of production numbers is skipped, the skipped number or set of numbers will be

8   noted.  In addition, wherever possible, each *.tif image will have its assigned

9   production number electronically "burned" onto the image.

10   A.13. <u>Data and Image Load Files.</u>

11            a.     <u>Load Files Required</u>. Unless otherwise agreed, each production

12                  will include a data load file in Concordance (*.dat) format and

13                  an image load file in Opticon (*.opt) format.

14            b.     <u>Load File Formats</u>

15                i.     Load file names should contain the volume name of the

16                     production media.  Additional descriptive information

17                     may be provided after the volume name.  For example,

18                     both ABC001.dat or ABC001_metadata.dat would be

19                     acceptable.

20                ii.     Unless other delimiters are specified, any fielded data

21                     provided in a load file should use Concordance default

22                     delimiters.  Semicolon (;) should be used as multi-entry

23                     separator.

24               iii.     Any delimited text file containing fielded data should

25                     contain in the first line a list of the fields provided in the

26                     order in which they are organized in the file.

27            c.     <u>Fields to be Included in Data Load File</u>. For all documents or

28                  electronic files identified as relevant, not privileged, and

17

produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to subparagraph (a).  The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images.  The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|-------|-------------|--------------|------------------|---------|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian who possessed the document or electronic file |
| OTHER_CUSTODIANS | Doe, Jane; Jones, James | N/A | Yes | When global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| NATIVEFILE | Natives\001\001\ABC00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |

18

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| ALL_PARTICIPANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails only; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCED_IN_NATIVE_AND_TIFF | Yes | N/A | YES | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f...... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

ATTACHMENT A
STIPULATED ESI PROTOCOL
2:20-CV-03575-TJH-JEM

A.14. <u>Files Produced in Native Format</u>.

    a. For any electronic file produced initially as a native file in accordance with Paragraph B.2 of the Protocol above, the file shall be given a file name consisting of a unique Bates number and, as applicable, a suitable confidentiality designation; for example, "ABC00000002_Confidential."  For each such native file, the production will include a *.tif image slipsheet (i) indicating the production number of the native file, (ii) with respect to any confidential document, setting forth the full confidentiality language applicable to the native file as set out in the protective order, and (iii) stating "File Provided Natively." To the extent that it is available, the original or redacted file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

    b. For any electronic file produced in native file format following production of a TIFF-image in accordance with Paragraph B.1 of the Protocol above, the file shall be given a file name consisting of (i) the Bates number of the first page of the associated TIFF-image and (ii) as applicable, a suitable confidentiality designation.  For each such native file, the production will include a new .DAT file (i) indicating the production number of the native file, (ii) identifying the path to the native file, (iii) adding a field stating "Yes," indicating that the file was produced in both native and TIFF formats, and (iv) linking the metadata associated with the originally produced TIFF image to the newly produced native file.

1
2
3
4
5
6
7
8
9

A.15. <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format.  Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, *etc.*). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.

10
11
12
13
14
15
16
17
18

A.16. <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.  The receiving parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.

19
20
21
22
23
24
25
26
27
28