# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| NARGUESS NOOHI,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHNSON & JOHNSON CONSUMER, INC.,<br><br>    Defendant. | CV 20-03575 TJH (JEMx)<br><br><br>Order<br>[67] |

    The Court has considered Plaintiff Narguess Noohi's motion for class certification, together with the moving and opposing papers.

    In her Second Amended Complaint ["SAC"], Noohi alleged that, on March 23, 2020, she purchased Neutrogena Oil-Free Face Moisturizer for Sensitive Skin [the "Product"], manufactured by Defendant Johnson & Johnson Consumer, Inc. ["Johnson & Johnson"]. Noohi alleged that she purchased the Product because of a representation on the packaging that the Product was oil-free. Later, Noohi learned that the Product contained ethylhexl palmitate and soybean sterols, which, allegedly, are oils or byproducts of oils.

    The SAC alleged four claims: (1) Common law fraud; (2) Violation of

California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ["FAL"]; (3) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ["UCL"]; and (4) Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ["CLRA"].

Noohi, now, moves to certify this putative class action on behalf of all consumers who purchased the Product in California between April 17, 2016, and the date of this Order, as to her FAL, UCL, and CLRA claims. Noohi does not seek to certify her common law fraud claim.

To certify a class action, Noohi bears the burden of establishing that the proposed class satisfies all four threshold requirements of Fed. R. Civ. P. 23(a): (1) Numerosity of class members; (2) Commonality of issues of fact and law; (3) Typicality of her own claims; and (4) Adequacy of herself and class counsel to fairly and adequately pursue the action. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Noohi, also, bears the burden of establishing at least one of the requirements of Fed. R. Civ. P. 23(b). *See Rodriguez*. Because Noohi seeks certification pursuant to both Rule 23(b)(2) and Rule 23(b)(3), she must satisfy both. *See Rodriguez*.

**Numerosity**

Johnson & Johnson did not dispute that the putative class is sufficiently numerous, nor is there any indication otherwise. Consequently, numerosity is satisfied.

**Typicality**

Typicality is satisfied if the class representative has the same or similar injury as the class, has been injured by the same course of conduct as other class members, and the action is based on conduct not unique to the parties. *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022). Noohi's injury is typical of the putative class because she, allegedly, sought an oil-free moisturizer and purchased the Product believing, based on its packaging, that it was oil-free.

Johnson & Johnson presented undisputed evidence that Noohi purchased the Product because her diet, at the time, required her to use oil-free moisturizers.

However, Noohi's subjective reason for seeking an oil-free moisturizer is not relevant, even if it is idiosyncratic, because her CLRA, UCL, and FAL claims depend upon a showing that the Product was objectively deceptive to a reasonable consumer. *See Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Consequently, typicality is satisfied.

**Adequacy**

Adequacy of representation is satisfied when the proposed named class representative and the proposed class counsel are free of conflicts of interest and are able to vigorously prosecute the class claims. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

There were no arguments that Noohi is not an adequate representative. However, Johnson & Johnson argued that Noohi's counsel, Todd M. Friedman, and his firm, have a conflict of interest due to their representation of the plaintiff in a putative nationwide class action pending in the Northern District of Illinois, *Flaherty v. Johnson & Johnson Consumer, Inc.*, No. CV 20-07255 (N.D. Ill.). *Flaherty* is based on allegedly deceptive oil-free packaging language for Johnson & Johnson products other than the Product.

Friedman would not be adequate counsel, here, if he represented another class against the same defendant and there was a significant risk that his representation of both classes would limit his ability to adequately represent either of the classes, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1047 (N.D. Cal. 2014), including in a circumstance where the litigation interests of one class could be at odds with the interests of the other class, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).

Johnson & Johnson speculated that Flaherty, herself, might object to a settlement reached between Noohi and Johnson & Johnson, here, and that Friedman might be tempted to allocate more effort or resources to *Flaherty* than to the instant case if *Flaherty* were to be certified. First, there is no evidence that Flaherty, who is alleged to be an Illinois resident, could claim membership in Noohi's class of California

purchasers. Second, there is no evidence that an actual conflict has developed. Sspeculative conflicts do not warrant disqualification. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015). If an actual conflict develops, the Court can, then, revisit this issue. *See Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Consequently, for now, adequacy is satisfied.

**Commonality**

Commonality is satisfied "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one that is capable of class-wide resolution. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (*en banc*). As opposed to a common question, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Olean*, 31 F.4th at 663.

To succeed on her CLRA claim, Noohi must show that (1) Johnson & Johnson made a deceptive representation and (2) that deception caused harm to the putative class. *See In re Vioxx Class Cases*, 180 Cal. App.4th 116, 129 (2009). Causation is established on a class-wide basis upon a showing that the representation was material, *i.e.*, it would be important to a reasonable consumer in deciding to purchase the Product. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Thus, there are at least two questions related to the CLRA claim that are capable of class-wide resolution: (1) Whether Johnson & Johnson's oil-free packaging language was deceptive; and (2) Whether that deception would be important to a reasonable consumer.

Noohi's UCL and FAL claims both require proof that a reasonable person would likely be deceived by the alleged misrepresentation. *See Freeman*, 68 F.3d at 289. To show likelihood of deception on a class-wide basis, Noohi must establish that every member of the putative class was exposed to the alleged misrepresentation. *See Mazza*

*v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled on other grounds by Olean*, 31 F.4th at 682 n.34 (9th Cir. 2022). Thus, there are at least two questions related to the UCL and FAL claims that are capable of class-wide resolution: (1) Whether the oil-free packaging language would be likely to deceive a reasonable consumer; and (2) Whether every member of the putative class was exposed to the packaging language.

Consequently, commonality is satisfied for all three of the proposed class claims.

**Rule 23(b)(2)**

Rule 23(b)(2) requires Noohi to show that Johnson & Johnson's alleged actions applied generally to the entire putative class, such that class-wide injunctive relief is appropriate. Fed. R. Civ. P. 23(b)(2). Johnson & Johnson did not dispute that Noohi met that burden, nor is there any indication otherwise.

Additionally, Noohi must show that at least one member of the putative class has standing to pursue injunctive relief. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). This Court held, in ruling on Johnson & Johnson's earlier motion to strike, that Noohi had standing to seek prospective injunctive relief because she alleged that she would like to purchase the Product again, but that her inability to rely on the Product's packaging language prevented her from doing so. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 956, 969-70 (9th Cir. 2017). Evidence provided by both parties, here, is consistent with Noohi's earlier allegations and, indeed, only adds support to the Court's previous conclusion that Noohi faces the type of "threat of imminent or actual harm" required for standing. *See Davidson*, 873 F.3d at 969-70.

Consequently, Rule 23(b)(2) is satisfied.

**Rule 23(b)(3)   Predominance**

Rule 23(b)(3) requires Noohi to establish that common questions predominate, here, over individualized issues. *See* Fed. R. Civ. P. 23(b)(3). The Court must resolve whether the common questions, identified above, are not overwhelmed by inquiries that must be evaluated on an individual basis. *Tyson Foods, Inc. v.*

*Bouaphakeo*, 577 U.S. 442, 457 (2016).

To satisfy predominance, the common questions that will arise for each of Noohi's claims must relate to the central issue of each claim. *Olean*, 31 F.4th at 665. Here, it is clear that resolution of the common questions bear directly on the resolution of the key elements of Noohi's claims. *See Olean*, 31 F.4th at 665.

Additionally, "the court must make a rigorous assessment of the available evidence and the method or methods by which [Noohi] propose[s] to use the class-wide evidence to prove the common question in one stroke." *Olean*, 31 F.4th at 666. If "each class member could have relied on [Noohi's evidence and methods] to establish liability if he or she had brought an individual action," predominance will be satisfied. *Tyson*, 577 U.S. at 455. However, Noohi is not required to show, at this stage, that the class will, actually, prevail on the merits of those questions. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Finally, because Noohi's CLRA claim requires proof of damages, she must show, for that claim, "that damages are capable of measurement on a class-wide basis." *See Comcast*, 569 U.S. at 34.

**CLRA Claim**

First, the Court must determine whether Noohi can resolve the two common questions relating to her CLRA claim in one stroke. *See Olean*, 31 F.4th at 666.

**Deception**

Noohi intends to demonstrate that the oil-free language was deceptive through the testimony of her expert, Dr. Michael A. Hickner, a professor of materials science and engineering. In a declaration, Hickner explained that the word oil lacks a universally agreed upon definition, but usually refers to substances that are generally hydrophobic, more viscous than water, and less dense than water. According to Hickner, two compounds that Noohi alleged were ingredients in the Product – ethelhexyl palmitate and soy sterols – have the properties of oil, as does dimethicone, which was not mentioned in the SAC.

Johnson & Johnson challenged the admissibility of Hickner's declaration on two main grounds: (1) That Hickner's conclusions are not reliable because they lack sufficient scientific support; and (1) That Hickner failed to establish his expertise.

A court "evaluating challenged expert testimony in support of class certification … should evaluate admissibility under the standard set forth in *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)]." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Under *Daubert*, an expert's testimony must be scientifically reliable and the expert must have sufficient expertise to assist the trier of fact in deciding a material factual issue. *Daubert*, 509 U.S. at 592. At the class certification stage, the evidence need not be admissible, provided that it "likely could [be] presented in an admissible form at trial," so the *Daubert* inquiry, at this juncture, only "go[es] to the weight that evidence is given[.]" *Sali*, 909 F.3d at 1004, 1006.

To be reliable, Hickner's conclusions must be based on preexisting research, be peer reviewed, or, failing those, Hickner must "point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like – to show that [he has] followed the scientific method." *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1319 (9th Cir. 1995). Because Hickner's declaration did not satisfy any of those criteria, it is not admissible at this procedural juncture. Consequently, the Court's inquiry, now, is whether that current inadmissibility bears negatively on Hickner's ability to introduce scientific conclusions that could prove, or disprove, deception on a class-wide basis. *See Sali*, 909 F.3d at 1006. There is no indication, here, that Hickner will not be able to present his conclusions in an admissible manner at summary judgment or trial.

Johnson & Johnson offered declarations of its own experts to counter Hickner's declaration. "The determination whether expert evidence is capable of resolving a class-wide question in one stroke may include weighing conflicting expert testimony and resolving expert disputes." *Olean*, 31 F.4th at 666. However, neither of Johnson & Johnson's experts demonstrated that Hickner's conclusions are, for example,

scientifically unsound or otherwise unsupportable, such that they would be useless for the purpose of proving deception. *See Olean*, 31 F.4th at 667. Rather, the crux of Johnson & Johnson's argument, and that of its experts, was that its experts used a more appropriate definition of oil-free that better reflected consumer expectations, and that, based on that definition, consumers who purchased the Product got what they expected. However, that argument did not speak to the predominance question, *i.e.*, whether a reasonable fact finder could rely on Hickner's definition to resolve whether the Product's labeling was deceptive. *Olean*, 31 F.4th at 679.

With regard to expertise, Johnson & Johnson argued that Hickner lacked expertise in the field of skincare products, an industry with its own shared understanding of the term oil-free. That critique, however, did not go to Hickner's qualifications as a chemist, but, again, to Johnson & Johnson's theory of the case. To decide whether that theory should prevail, at this stage, would "put the cart before the horse by requiring plaintiffs to show at certification that they will prevail on the merits." *Olean*, 31 F.4th at 667. Hickner's chemistry expertise is sufficiently relevant to the task of assisting the fact finder in determining whether the Product's packaging language was deceptive. *See Daubert II*, 43 F.3d at 1319. Whether it is sufficient to prove that the packaging language was, indeed, deceptive is a question for a later stage of litigation. *Amgen*, 568 U.S. at 459.

Thus, Noohi has demonstrated that she will be able to resolve the common question of deception on a class-wide basis, in one stroke. *See Olean*, 31 F.4th at 666.

### Materiality

Because materiality is objective, Noohi need not ultimately prove that the allegedly deceptive packaging language played a role in each class member's decision to purchase the Product, but only that it would have been important to a reasonable consumer. *See Steroid Cases*, 181 Cal. App. 4that 157. Indeed, CLRA claims are "ideal for class certification because they will not require the [C]ourt to investigate class members' individual interaction with the product." *Bradach v. Pharmavite, LLC*,

735 F. App'x 251, 255 (9th Cir. 2018). In other words, it does not matter, here, *how* Noohi will prove that the packaging language was important to a reasonable person, because any individual class member could rely on that same evidence in their own, individual case. *See Olean*, 31 F.4th at 667. Thus, to establish that she can resolve materiality with common proof, Noohi need only show that she can resolve whether exposure to the deception occurred on a class-wide basis.

Noohi intends to demonstrate that putative class members were uniformly exposed to the oil-free packaging language by pointing to the Product's packaging, which prominently displayed the language as part of the Product's name and was unavoidable. Johnson & Johnson did not dispute that the packaging language was visible to consumers who purchased the Product. Accordingly, the Court can infer class-wide exposure to the packaging langauge. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 400 (N.D. Cal. 2021).

Thus, Noohi has demonstrated that she will be able to resolve materiality on a class-wide basis, in one stroke. *See Olean*, 31 F.4th at 666.

### Damages

To show that damages are capable of measurement on a class-wide basis, Noohi must establish that "the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). She need not show the actual amount of damages incurred; just that "a valid method has been proposed for calculating those damages." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019). Further, CRLA "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Nguyen*, 932 F.3d at 818.

Noohi intends to calculate class-wide damages via a two-phase, market-based study that would measure, *inter alia*, changes in consumers' likelihood of recommending or repurchasing the Product after they are told that the Product's oil-

free claim is false. Her econometrics expert, Dr. Wade Roberts, will, then, convert that change into a price premium to approximate damages. Numerous courts have approved damage models in other CLRA cases that, like Noohi's model, endeavor to calculate the difference in value of a product with an alleged misrepresentation and without it, as a means of calculating damages. *See Nguyen*, 932 F.3d at 818.

Further, because Rule 23 "permit[s] the certification of a class that potentially includes more than a *de minimis* number of uninjured class members," Noohi's method is sufficient, at this juncture, even though it may show that *no* class members were actually harmed by the allegedly deceptive packaging language. *See Olean*, 31 F.4th at 669. The only question, here, is whether her proposal is *capable* of showing that putative class members incurred damages, not whether her proposal shows, now, that damages were, actually, suffered. *See Olean*, 31 F.4th at 669.

Johnson & Johnson, in its separately-filed evidentiary objections, challenged Roberts' opinions on several admissibility grounds. The Court disregarded those objections that lacked an evidentiary basis. The remaining objections failed to rebut Noohi's *prima facie* case that Roberts is qualified to deliver his econometric analysis, that his analysis will, ultimately, be useful to the fact finder, and that, ultimately, Noohi can support her damages calculations with admissible evidence when she needs to do so. *See Sali*, 909 F.3d at 1006.

Further, Johnson & Johnson challenged various aspects of Noohi's proposal. Johnson & Johnson's own experts argued that Noohi's damages model will not be useful because of, *inter alia*, the subset of consumers she seeks to survey, the model's failure to consider supply side factors in calculating the price premium, and the preliminary and tentative nature of many specifics of her method. Those critiques do not establish that Noohi's proposed methodology is inadequate, but, rather, take issue with how her model might be executed and the conclusions that it might deliver. As such, those critiques are not yet ripe. Johnson & Johnson will have an opportunity – at summary judgment or trial – to demonstrate that Noohi's method failed to establish

that class members were damaged. *See Tyson*, 577 U.S. at 457.

Consequently, Noohi established, at this juncture, that the class's CLRA damages are capable of measurement on a class-wide basis. *See Just Film*, 847 F.3d at 1120.

**UCL and FAL Claims**

The Court identified, above, two common issues that are central to Noohi's UCL and FAL claims: (1) Whether the oil-free packaging language is likely to deceive an objective reasonable consumer; and (2) Whether every member of the putative class was exposed to the packaging language. As discussed above for CLRA claim, those issues are, likewise, susceptible to common proof on a class-wide basis for the UCL and FAL claims.

Consequently, Noohi has demonstrated that, for each claim that she seeks to certify, there are common questions, susceptible to class-wide proof, which predominate over individual questions. *See Olean*, 31 F.4th at 666.

Therefore, Noohi has satisfied the predominance requirement of Rule 23(b)(3).

**Rule 23(b)(3)    Superiority**

Rule 23(b)(3) requires Noohi to establish that class adjudication is superior to other available methods of adjudication. Here, class adjudication is superior because if each of the putative class members were to file an individual action, the Court's resources would be drained, and no individual plaintiff would likely recover more than a few dollars. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Consequently, superiority is satisfied.

Accordingly,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the motion for class certification be, and hereby is, 𝕲𝖗𝖆𝖓𝖙𝖊𝖉.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the class shall be defined as all consumers who

purchased Neutrogena Oil-Free Moisture Sensitive Skin in California between April 17, 2016 and November 30, 2022.

It is further Ordered that Plaintiff Narguess Noohi be, and hereby is, Appointed as the named class representative.

It is further Ordered that Todd M. Friedman of Law Offices of Todd M. Friedman PC be, and hereby is, Appointed as class counsel.

Date: November 30, 2022

Terry J. Hatter, Jr.
Senior United States District Judge